[No. 6670.   Decided June 29, 1907.]

ALLEN H. REYNOLDS, *Appellant*, v. PERCY C. HOLLAND, *Respondent*.[1]

LIBEL—ACTIONS—EVIDENCE—ADMISSIBILITY. In an action by an attorney for libel in publishing that he charged an excessive fee for the foreclosure of a mortgage when the work was done by defendant's attorney, evidence on the part of the plaintiff that he was attorney of record in the foreclosure suit and had not been released by the mortgagee from responsibility, is admissible.

SAME. In such an action, evidence that the fee allowed in the decree was excessive, offered by the defendant to sustain the truth of the charge, is inadmissible, since the allowance was to the client and had no bearing on the issues involved.

[1]Reported in 90 Pac. 648.

Same—What Constitutes—Truth of Charge—Burden of Proof —Trial—Verdict. Under Bal. Code, § 7087, defining libel to be the defamation of a person by words tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, a newspaper article holding up an attorney to public ridicule for refusal to pay bills for printing and for charging excessive fees is libelous, and the burden of establishing the truth is on the defendant; and where the publication is admitted and no evidence in justification is offered as to the matters libelous *per se*, the jury should be instructed to award damages therefor.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered April 18, 1906, upon the verdict of a jury rendered in favor of the defendant, in an action for libel. Reversed.

*Edward C. Mills* and *T. P. & C. C. Gose*, for appellant.

*Cary M. Rader, Will R. King*, and *Elihu F. Barker*, for respondent.

Root, J.—Appellant, a practicing attorney, brought this action to recover damages on account of the publication of alleged libelous matter in a newspaper managed by respondent. The case was tried to a jury, which returned a verdict for defendant. A motion for a new trial was interposed and denied, and a judgment was thereupon entered for respondent. Appeal is taken therefrom.

Plaintiff alleged in his complaint three causes of action. At the close of the evidence, the second of these was by the trial court withdrawn from the consideration of the jury. The first cause of action set forth the publication by defend-ant in his newspaper of the following article:

"Pecksniff and Shylock Outdone.

"Six months ago the Statesman published for Attorney Allen H. Reynolds, a legal notice of nineteen inches, which was run in six issues and for which a bill of $28.50 was rendered. When the bill was presented to him Attorney Reynolds tend-ered five dollars in payment, complaining that the charge was excessive. In fact the rate charged Reynolds was no more than is paid by local merchants for advertisements, and as

low as the rate paid by the city and county for the publication of notices. Yesterday Mr. P. C. Holland, proprietor of the Statesman, paid Mr. Reynolds, as attorney for The Farmers' Savings Bank, a fee of $221.33 for merely nominal services in connection with the foreclosure of a mortgage of $2,213.33, including interest, held by the Bank. Nearly all the papers in the proceedings, including the decree of the court, were prepared by Mr. Holland's attorney, C. M. Rader. The only services performed by Attorney Reynolds was to walk to the county clerk's office and file a complaint prepared by himself. The maximum attorney's fee allowed by law is 10 per cent. on the face of the mortgage, and Reynolds, like Shylock, demanded the fulfillment of the law to the last cent and the last pound of flesh. Reynolds got his money, but the Statesman's bill for publishing his legal notice is still unpaid and will probably remain unsettled until payment is enforced in court.

"For walking to the court house, about four blocks, Attorney Reynolds charges $221.33. A messenger boy would have done the same service for 15 cents. Mr. Reynolds poses as one of the founders of the Y. M. C. A. in this city, and as an exemplar of the Christian belief and practice. He is a professed believer in the Golden Rule laid down by his Master, 'Do ye unto others as ye would they should do unto you.' Ostensibly he spurns the modern rule of David Harum, 'To do to the other fellow what he is trying to do to you, and do it first.' Perhaps Mr. Reynolds can explain to the young men of the Y. M. C. A., who look upon him as a model of purity, goodness and uprightness, how he squares the Golden Rule with his refusal to pay Mr. Holland's moderate bill of $28.50 for printing his legal notice of nineteen inches six times, while he charges Mr. Holland $221.33 for walking four blocks to the county clerk's office. One plausible explanation might be that it was the only case Attorney Reynolds has had in court for months, and he charged merely enough to cover his expenses during his long period of idleness. Such a charge for running an errand is liable to demoralize the messenger service of this city, and lead to a serious strike among the boys for higher pay. Why should any boy be paid only 15 cents for running a mile and back on an errand, while Allen Reynolds gets nearly $225 for walking four blocks? It is hardly likely that Attorney Reynolds will say that he made his maxi-

mum charge to get even with the Statesman for charging more than five times what he was willing to pay for the publication of his legal notice. Revenge is inconsistent with the religion which teaches that one smitten on one cheek should turn the other for a biff. Old Pecksniff might have found excuses in his sophistry and hypocrisy for professing the meekness and lowliness of the Saviour, and at the same time practicing the business methods of a Shylock, but certainly the immaculate Allen Reynolds, the paragon of moral excellence and Christian practice, would not entertain ideals so base. If any one else but the preeminently good and moral Allen Reynolds were to make such charge of messenger service under the guise of law practice, he would run the risk of being called a shyster, a 'snitch,' a grafter, or a pettifogger, but of course no one would think of applying such terms of opprobrium to the professed local prototype of the perfect man. Like the great and good John D. Rockefeller, Mr. Reynolds probably looks forward to the day when he can use some of the tainted money secured by such methods in promoting Christian institutions for the betterment of his fellow man."

The third cause of action alleged another publication having reference to the matters referred to in the other article, and containing numerous offensive strictures upon appellant. It appears that plaintiff requested defendant to publish some advertisements, and that defendant did so and presented a bill for $28.50 for this service. The plaintiff refused to pay the bill, claiming that it was an excessive charge, and also claimed that he had an agreement whereby such publication was to be made for the sum of $5.

Concerning the attorney fee alluded to in the publication quoted, the record shows that the Farmers Savings Bank brought an action in the superior court for Walla Walla county against the Statesman Publishing Company and other parties, including this respondent. This action was to foreclose a mortgage for the sum of $2,213.33. Appellant was the attorney for the Farmers Savings Bank in said action. The complaint therein alleged that the sum of $225 was a reasonable sum to be allowed as an attorney's fee for the

foreclosure of said mortgage. Respondent was the holder of a second mortgage upon the same premises, and intervened with a cross-complaint to foreclose his mortgage, amounting to twelve or fifteen thousand dollars. In his said cross-complaint, which was sworn to by himself, he admitted the allegation that $225 was a reasonable attorney's fee to be allowed in the foreclosure proceeding brought by the Farmers Savings Bank above mentioned. He also alleged that $1,500 was a reasonable attorney's fee to be allowed for the foreclosure of his own mortgage. In the decree and judgment an allowance of $225 was made as an attorney's fee in the case of the Farmers Savings Bank, and $1,500 for the foreclosure of respondent's mortgage. It appears, however, that in paying the judgment, defendant paid only $221.33 as an attorney's fee in the Savings Bank foreclosure.

The motion for new trial was based on the following grounds: "1. Insufficiency of the evidence to justify the verdict. 2. That the verdict is against law. 3. Error in law occurring at the trial and excepted to at the time by the party making application." The denial of this motion by the trial court is assigned as error. We think the motion should have been sustained on all of the grounds mentioned. It was claimed by respondent that appellant had little or no responsibility in the foreclosure proceeding as his own attorney looked after the matter. To meet this, appellant offered evidence to show that his client had in no wise released him from responsibility in the matter. If respondent had the right to question the value of appellant's services in this manner ( a question we are not now called upon to decide), then appellant had the right to meet this by showing that he had in no manner been released from responsibility to his client as his attorney of record in the case.

Upon the trial defendant offered, and over the objection of plaintiff was permitted, to introduce evidence tending to show that $225 was an excessive charge to be made as an attorney's fee in the foreclosure proceeding mentioned. It is contended

that this evidence was not admissible. We think the contention must be upheld. We do not think it tends to prove the truth of any alleged libelous statement made in the published article complained of. The allowance of an attorney fee to the Farmers Savings Bank in the foreclosure proceeding was not an allowance to this appellant. The latter was the attorney in the case, but that does not mean that the allowance was to him. The judgment awarded him nothing. The allowance was to his client. What the latter may have paid him for his services may have been more or may have been less than the amount allowed by the decree, and is a matter that has no bearing upon the issues involved herein. Even if appellant be regarded as a party to whom that part of the judgment was awarded, then the evidence would be inadmissible, for the reason that said judgment would then be *res adjudicata* as to the amount of the attorney fee.

Our statute defines libel as follows:

"A libel is the defamation of a person made public by any words, printing, writing, sign, picture, representation, or effigy tending to provoke him to wrath, or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse; or any defamation, made public as aforesaid, designed to blacken and villify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives or friends. . . ." Bal. Code, § 7087 (P. C. § 1856).

Under this statute it will be seen that many of the statements in said publications were libelous, if untrue. The burden of proving the truth of such statement was upon the defendant. As to the truth of some of these statements which are libelous *per se*, there is no evidence. When the owner or manager of a newspaper has a difficulty with another person and makes, in the columns of his newspaper such an attack upon his adversary as we here find, he should be held liable for the damages he thereby occasions, unless he can clearly establish the truthfulness of his otherwise libelous statements. The liberty of the press is important and should be always guaran-

teed.   But the abuse of that liberty is a serious menace to individual rights and happiness, subversive of law and order, and detrimental to the best interests of society and the state. Under the evidence in this case, we think the jury should not only have been instructed concerning the matters as to which there was a conflict in the evidence, but should have been told that there was no evidence as to the truthfulness of some of the libelous statements made, and that appellant was entitled to a verdict for such damages, if any, as had been occasioned by that portion of the libelous statements as to the truth of which there was no evidence, as well as for those occasioned by any other of the libelous statements which they should find not to be proven truthful by a fair preponderance of the evidence.

The judgment of the honorable superior court is reversed, and the cause remanded for a new trial.

HADLEY, C. J., FULLERTON, CROW, DUNBAR, RUDKIN, and MOUNT, JJ., concur.